UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-18-52 (2) (S2) |
| RAYMOND JONES | § § § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and John D. Jocher, Assistant United States Attorney, and the defendant, **Raymond Jones** ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A)** and **11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges Defendant with conspiracy to possess with the intent to distribute a controlled substance, to wit: 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A)(viii). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A)(viii), is imprisonment of not less than 10 years and or more than life, and fine of not more than $10,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 5 years. *See* Title 18, United States Code, sections 3559(a)(1), and 3583(b)(1). Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for up to 5 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(1), and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he/she is a

2

naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he/she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s). In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

8. The United States agrees to each of the following:

    (a) The defendant agrees to waive his right to appeal his conviction and sentence, directly or collaterally;

    (b) If recommended by the United States Probation Office, the United States agrees to recommend that defendant receive a 2 level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a), for acceptance of responsibility as contemplated by the Sentencing Guidelines;

    (c) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the

4

Court to allocate their resources more efficiently;

(d) If Defendant qualifies for an adjustment under U.S.S.G. §5C1.2 (safety valve), the United States agrees not to oppose the defendant's request for its application at the time of sentencing;

(e) The United States agrees to recommend a Mitigating Role: -2 (minor participant) pursuant to U.S.S.G. Section 3B1.2 (b);

(f) The United States agrees to recommend a sentence at the low end of the applicable guideline range.

### Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

6

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

12. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he/she is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

(a) Between December 2015 and February 2016, HSI agents and Task Force Officers from Montgomery County, Texas, made multiple methamphetamine purchases from Ivan Salazar-

Zarazua using a confidential source to conduct the transactions. Agents, who had their source coordinate the drug deals with Salazar-Zarazua by phone, subsequently obtained authorization from United States District Judge Vanessa Gilmore to intercept Zarazua's phone beginning on April 20, 2016.

(b) On June 9, 2016 and June 10, 2016, agents intercepted multiple telephone conversations from Salazar-Zarazua's phone. These calls were between Salazar-Zarazua and Santos Vale Rodriguez. Rodriguez made contact with Salazar-Zarazua to make arrangements for the purchase of two Kilograms of Methamphetamine on behalf of his (Rodriguez's) brother-in-law. The recoreded conversations included the following:

**Call Session 2321**: Rodriguez told Salazar-Zarazua he had the money for two and asked Salazar-Zarazua for a better price for his brother-in-law. Salazar-Zarazua said that he's only making $300. Rodriguez tried to get the price down to $8,700 and Salazar-Zarazua said that he was staying at $8,900. Rodriguez agreed to the price and said that he needed two for the morning. Salazar-Zarazua agreed and Rodriguez said that he would call his brother-in-law and tell him to come.

**Call Session 2329**: Rodriguez called Salazar-Zarazua again told him that he will be at the house in the morning. Rodriguez again explained to Salazar-Zarazua that his brother-in-law wanted a cheaper price because he would make multiple purchases, but Salazar-Zarazua refused to budge on the price.

(c) On June 10, 2016, agents initiated surveillance at Salazar-Zarazua's residence located at 4513 Dewberry St., Houston, and shortly after 7:30 a.m., an officer observed Salazar-Zarazua, along with two unidentified Hispanic males, exit the residence. The officer observed Salazar-Zarazua place an object in the trunk of his 2006 BMW, 4 door and then they departed the residence in the vehicle. Subsequently, the following recorded conversations were intercepted between Rodriguez and Salazar-Zarazua:

**Call Session 2348**: Approximately 11:23, Rodriguez told Salazar-Zarazua that "he" is

8

going to be at his (Rodriguez's) house around 12:45 or 1:00. Salazar-Zarazua complained that he was already late and Rodriguez reassured him that "he" (brother-in-law) would be there at 12:45 or 1:00.

**Call Session 2352**: Approximately 1:23 p.m., Rodriguez told Salazar-Zarazua that he needed to make sure all the grams were there because last time he was missing grams. Salazar-Zarazua told Rodriguez that everything was good and that he had a scale.

**Call Session 2356**: Approximately 2:10 p.m. Rodriguez told Salazar-Zarazua that he (his brother-in-law) was about to pull up. Salazar-Zarazua replied that he would be there in 10-20 minutes.

(d) Surveillance units watching Rodriguez's residence, located in Houston, Texas, observed two vehicles arrive at the location. A 2013 Volkswagen Jetta registered to Johnny Roman and a rented 2015 Chevy Tahoe registered to EAN Holdings (DBA Enterprise Rental Car).

Agents observed a black male, later identified as Raymond Jones, exit the black Volkswagen Jetta and a Hispanic male, later identified as Johnny Roman, exit the Tahoe. Several minutes later, Salazar-Zarazua and the two males arrived and parked the BMW in the driveway. Salazar-Zarazua and the two unidentified males exited the BMW and Salazar-Zarazua and retrieved a package from the trunk. Rodriguez, Jones and Roman met Salazar-Zarazua in the driveway and then they all entered the Rodriguez's residence. Several minutes later, Salazar-Zarazua and the two males exited the residence and left in the BMW with Salazar-Zarazua in the driver seat. Next, Jones and Roman exited the front door of the residence. Agents observed that Jones carried a black box from the house that he placed in the trunk of the Jetta. Surveillance saw Roman exit the residence carrying a black backpack/bag that he placed it into the Tahoe before he drove away. When the three vehicles and suspects departed from the address, agents maintained surveillance on the Chevy Tahoe driven by Roman and Volkswagon Jetta driven by Jones. Subsequently, Jones's vehicle was stopped by officers and a search of the vehicle led to the

9

discovery of 3 plastic bags of methamphetamine inside the black box Jones was seen to carry to his car. Agents labeled the methamphetamine and submitted it to the HSI Laboratory for analysis where analysts determined that drugs contained Methamphetamine Hydrochloride with a net weight of 1,968.73 grams and a purity level of 100%.

(e) After his arrest, co-defendant Santos Vale Rodriguez debriefed with the government. Vale Rodriguez explained that he knew Jones personally and that on the date that agents observed Salazar-Zarazua, Roman, and Jones at his house, and that Roman provided the money to Salazar-Zarazua to purchase the methamphetamine. Vale Rodriguez also described that Roman gave the drugs to Jones to transport them after he (Roman) paid Salazar-Zarazua for the methamphetamine. Moreover, co-defendant Roman debriefed with the government and confirmed that he gave the methamphetamine to Jones to transport back to the College Station area.

(f) At trial, the United States would have introduced the intercepts discussed herein and testimony from Vale Rodriguez and Roman about Jones's role. Finally, the government would have introduced the laboratory test results for the seized methamphetamine and federal agents would have confirmed that the narcotics seized from Jones is a quantity consistent with narcotics distribution/trafficking, not personal use.

### Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United

States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

19. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

20. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

21. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

23. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

24. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

25. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges

13

that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

26. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _February 11_, 2019.

_____
Defendant

Subscribed and sworn to before me on _February 11_, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
John D. Jocher
Assistant United States Attorney
Southern District of Texas

_____
Joshua Lake
Attorney for Defendant

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § |
| v. | § § CRIMINAL NO. H-18-52 (2) (S2) |
| RAYMOND JONES | § § § |
| Defendant. | § |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     Date 2/11/19
Joshua Lake
Attorney for Defendant

15


I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My atctorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          _2/11/19_____
Raymond Jones                                                     Date
Defendant